## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| JORDAN AWOYE and AWOYE CAPITAL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JULIA JONES and META PLATFORMS, INC., <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br><br> **Civil Action No.** |

## COMPLAINT

Plaintiffs, Jordan Awoye ("Awoye") and Awoye Capital, LLC ("Awoye Cap"), by and through their attorneys, Samuel B. Fineman, Esq. of Semanoff Ormsby Greenberg & Torchia, LLC, for their Complaint against Defendants, Julia Jones ("Jones") and Meta Platforms, Inc. ("Meta"), allege as follows:

## PRELIMINARY STATEMENT

This action results from orchestrated defamatory assaults of Defendant Jones against Awoye and Awoye Cap, launched through Instagram, which has caused significant harm to Awoye personally, his brand and his burgeoning business.

## PARTIES

1. Plaintiff Jordan Awoye is a resident of New York.

2. Plaintiff Awoye Capital, LLC is a limited liability company formed under the laws of Delaware with a principal place of business in New York.

3. Defendant Jones is a resident of Bergen County, New Jersey.

4. Defendant Meta is a corporation formed under the laws of Delaware with a principal place of business in California.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1332, as there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over defendant Julia Jones as she is a resident of New Jersey.

7. This Court has personal jurisdiction over defendant Meta Platforms, Inc. as it conducts substantial business in New Jersey, maintains an interactive website accessible to New Jersey residents, and the claims arise from Meta's activities in New Jersey where it published and distributed the defamatory content at issue and where Awoye's brand and reputation were harmed.

8. Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in this district -- where Awoye's brand was diminished -- and defamatory statements were published aand ccessible to New Jersey residents, and where Defendant Jones resides.

## STATEMENT OF FACTS

8. Plaintiff Jordan Awoye is the Founder and Managing Principal of Awoye Capital, LLC, an independent advisory/wealth-management firm serving high-net-worth clients, athletes, entrepreneurs and families.

9. Plaintiff Awoye Cap was founded by Jordan Awoye in 2019 and offers bespoke wealth management, private equity access and strategic advisory services.

10. Awoye has built a reputation in the financial services industry and has been featured in outlets such as Forbes, CNBC and Yahoo Finance.

11. Defendant Jones operates an Instagram account under the handle "@jul.Joness" and identifies herself as the "Owner @ Axis Creations NYC," Ex-arena football cheerleader, Design Enthusiast and Innovator. A true and correct copy of Jones' verified Instagram face page is attached hereto, made a part hereof and marked as Exhibit "A."

12. Per her Instagram page, Jones has 8,247 followers as of the date of this Complaint. See Ex. "A."

13. On or about February 20, 2025, Defendant Jones published a combined video/text post on Instagram stating: "Oh, so Jordan Awoye is out here preaching financial literacy while working with folks like James Harden? Cute. Meanwhile, you literally robbed me —helped my trafficker (Gerald Adams) to attempt to pull a life insurance policy on me, and even used my Social Security number WITHOUT my consent to open an account in my name. Make it make sense! I never signed up to be a client of Awoye Capital." A true and correct copy of Jones' post and the transcript of the video portion of same is attached hereto, made a part hereof and marked as Exhibit "B."

14. In the same Instagram post, Defendant Jones further stated: "Call me crazy all you want, but receipts don't lie especially it is you on the other side of the phone! Please check under my highlights and look for the Awoye Scam for live audio!" See Ex. B."

15. Defendant Jones included hashtags in her post including "#FraudAlert," "#AwoyeExposed," "#tryagain," "#awoyecapital," "#scammeralert," and "#allstarweekendscammer."

16. In a subsequent Instagram post featuring a photograph of Awoye sitting with NBA star James Harden, Defendant Jones published the following statements: "After all that, you cozy up to an athlete and claim you're teaching financial literacy? Honey, that's just disgusting! #Exposed #FraudAlert #FinancialLiteracyFail." A true and correct copy of said post is attached hereto, made a part hereof and marked as Exhibit "C."

17. Defendant Jones tagged financial regulatory bodies in her posts, including "@charlesschwab" and "@finraofficial." See Ex. "C."

18. As part of her rant in the February 20, 2025 Instagram video "reel," Defendant Jones made numerous false allegations against Awoye. See Ex. "B."

19. In these recordings, defendant Jones falsely claimed that plaintiff Awoye "took a forged signature" and "used my Social Security number to move all the money from Equitable to Charles Schwab." See Ex. "B."

20. Defendant Jones falsely claimed that Awoye "attempted to help Gerald [Adams] pull a life insurance policy out on me, not knowing that Gerald had threatened to kill me." See Ex. "B."

21. Defendant Jones falsely claimed that Awoye "colluded with Gerald [Adams]," and "devised a plan to send an email out saying that I was crazy." See Ex. "B."

22. Defendant Jones falsely claimed that Awoye "took my Social Security number and used it at Charles Schwab to open the account." See Ex. "B."

23. Defendant Jones falsely claimed that Awoye was involved in an "insurance policy with my signature forged on there." See Ex. "B."

24. Defendant Jones falsely claimed that Awoye "cleaned me the f*** out" and "attempted to pull a life insurance policy with somebody that threatened to kill me." See Ex. "B."

25. Defendant Jones publicly stated: "I am going to make sure on everything I love, Jordan, you go to jail. You stole my Social Security number." See Ex. "B."

26. Defendant Jones publicly stated: "Say no to Jordan Awoye, to Awoye Capital. He's part of the scamming circle." See Ex. "B."

27. Defendant Jones publicly stated: "It's alarming to see that an individual, Jordan Awoye, now works with James Harden... admitting that he took a forged signature and how him and Gerald used my Social Security number to move all the money from Equitable to Charles Schwab." See Ex. "B."

28. Defendant Jones publicly stated: "My blood just boils when I see the s*** that Jordan does and pretends to be a saint... scam the f*** out of somebody." See Ex. "B."

29. Defendant recently posted yet again on Instagram, claiming that "my blood just boils when I see the S#$% that Jordan does, and pretends to be saint like you just didn't scam the %*#& out of somebody, … and you're sitting next to James [Harden], poor James [Harden], he probably doesn't even know what the hell you just did. I also heard you were doing shit for Shack [Shaquille O'Neal]. Shack probably doesn't even know how you scammed the f$%# out of me."

30. For its part, Defendant Meta, through its Instagram platform, published and distributed Defendant Jones' false and defamatory statements about Awoye, clearly identifying Awoye through his multiple photographs, one of which was featured on Jones' Instagram landing page entitled "Awoye Scam." See Ex. "A."

31. Defendant Meta allowed Defendant Jones to use Awoye's image alongside the defamatory statements on Instagram without Awoye's consent.

5

32. Defendant Meta benefited commercially from the engagement with this content through advertising revenue and user engagement.

33. The statements made by Defendant Jones about Awoye are false and defamatory.

34. Awoye did not rob or steal from Defendant Jones.

35. Awoye did not help anyone attempt to "pull" a life insurance policy on Defendant Jones.

36. Awoye did not use Defendant Jones' Social Security number without her consent to open an account in her name.

37. Awoye did not forge Defendant Jones' signature.

38. Awoye did not collude with anyone against Defendant Jones.

39. Awoye is not a scammer, fraudster or colluder and does not otherwise engage in criminal activities.

40. The false statements made by Defendant Jones have damaged Awoye and Awoye Cap's reputations and business interests.

41. The false statements made by Defendant Jones have caused Awoye severe emotional distress.

42. To the extent Defendant Jones' claims have been reviewed by organizations such as FINRA and the like, no such claims have been prosecuted and Awoye was never charged.[1]

## CLAIMS FOR RELIEF

### Count I - Defamation
### (against Defendant Julia Jones)

43. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. Defendant Jones made false statements about Plaintiffs.

45. Defendant Jones published Instagram posts and audio recordings containing false statements, claiming that Awoye "robbed" Defendant Jones, helped her alleged "trafficker" attempt to "pull" a life insurance policy on her, used her Social Security number without consent to open an account in her name, forged her signature, and colluded with Gerald Adams against her.

46. Defendant Jones communicated these false statements to thousands of third parties.

47. Defendant Jones published these false statements on Instagram, making them accessible to the public, including Defendant Jones' followers and anyone who searched for Awoye or Awoye Capital on Instagram or the internet generally.

48. Defendant Jones tagged financial regulatory bodies like FINRA and Charles Schwab in her posts, further communicating these false statements to third parties.

49. Defendant Jones acted with fault amounting to negligence at the least.

50. Defendant Jones acted with actual malice or, at minimum, negligence in making these false statements, as she knew or should have known that the statements were false.

51. Defendant Jones' false statements damaged Plaintiffs' reputations.

52. Defendant Jones' false statements damaged Awoye's reputation as a financial advisor and wealth manager, potentially causing him to lose clients and business opportunities.

53. Likewise, Defendant Jones' false statements damaged Awoye Cap's reputation as a wealth management firm, potentially causing it to lose clients and business opportunities.

---

[1] FINRA stands for the Financial Industry Regulatory Authority. It's a non-governmental, self-regulatory organization ("SRO") that oversees broker-dealers and registered representatives in the U.S. securities industry.

**Count II - Defamation Per Se**
**(against Defendant Julia Jones)**

54. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. Defendant Jones made statements that impute criminal conduct to Awoye.

56. Defendant Jones claimed that Awoye "robbed" her, committed identity theft by using her Social Security number without consent, and engaged in forgery, all of which impute criminal conduct to Awoye.

57. Defendant Jones made statements that affect Awoye in his business, trade, profession or office.

58. Defendant Jones claimed that Awoye engages in fraudulent financial practices, which directly affects him in his profession as a financial advisor where trust and integrity are paramount.

59. Defendant Jones publicly accused Awoye of being a "scammer" and part of a "scamming circle," directly attacking his professional integrity and ethics.

60. Defendant Jones' statements are defamatory *per se* and presumptively harmful to Plaintiffs' collective reputation without requiring proof of special damages.

**Count III - Slander**
**(against Defendant Julia Jones)**

61. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

62. Defendant Jones made false and defamatory oral statements concerning Awoye.

63. Defendant Jones created audio recordings containing false and defamatory statements about Awoye, claiming he committed fraud, identity theft and forgery.

64. Defendant Jones published these oral statements to thousands of third parties.

65. Defendant Jones published these audio recordings on Instagram, making them accessible to the public, including Defendant Jones' followers and anyone who searched for Awoye or Awoye Capital, LLC on Instagram or the internet generally.

66. Defendant Jones acted with fault amounting to at least negligence.

67. Defendant Jones acted with actual malice or, at minimum, negligence in making these false oral statements, as she knew or should have known that the statements were false.

68. Defendant Jones' false oral statements are actionable irrespective of special harm.

69. Defendant Jones' false oral statements impute criminal conduct and professional misconduct to Awoye, making them actionable irrespective of special harm.

### Count IV - False Light
### (against Defendant Julia Jones)

70. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71. Defendant Jones placed Awoye in a false light before the public.

72. Defendant Jones publicly portrayed Awoye as a criminal who commits fraud, identity theft, and forgery, placing him in a false light before the public.

73. The false light in which Awoye was placed would be highly offensive to a reasonable person.

74. Being publicly portrayed as a criminal who commits fraud, identity theft, and forgery would be highly offensive to a reasonable person, especially given Awoye's profession as a financial advisor where trust and integrity are paramount.

75. Defendant Jones acted with knowledge of the falsity of the publicized matter and the false light in which Awoye would be placed, or with reckless disregard thereof.

76. Defendant Jones knew or should have known that her statements were false and that they would place plaintiff Awoye in a false light, or she acted with reckless disregard for the truth.

### Count V - Trade Libel and Business Disparagement
### (against Defendant Julia Jones)

77. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78. Defendant Jones published false statements concerning Awoye's business, Awoye Cap.

79. Defendant Jones published false statements concerning Awoye's business practices, claiming Awoye engages in fraudulent financial practices, identity theft and forgery.

80. Defendant Jones specifically targeted Awoye's business by using hashtags like "#AwoyeCapital" and "#scammeralert," and by tagging financial regulatory bodies like FINRA and Charles Schwab in her posts.

81. Defendant Jones directly attacked Awoye's business by stating "Say no to Jordan Awoye, to Awoye Capital. He's part of the scamming circle."

82. Defendant Jones acted with malice.

83. Defendant Jones knew or should have known that her statements were false and that they would damage Awoye and Awoye Cap's business reputation, or she acted with reckless disregard for the truth.

84. Defendant Jones' false statements caused special damages to Plaintiffs.

85. Defendant Jones' false statements damaged Plaintiffs' business reputation and caused loss of clients and business opportunities, resulting in pecuniary harm.

### Count VI - Intentional Infliction of Emotional Distress
### (against Defendant Julia Jones)

86. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 85 as if fully set forth herein.

87. Defendant Jones engaged in intentional or reckless conduct.

88. Defendant Jones intentionally or recklessly made false accusations of serious criminal conduct against plaintiff Awoye, including fraud, identity theft and forgery.

89. Defendant Jones publicly stated "I am going to make sure on everything I love, Jordan, you go to jail. you stole my Social Security number" and "I hope you sit in jail."

90. Defendant Jones' conduct was extreme and outrageous.

91. Making false accusations of serious criminal conduct in a public forum is extreme and outrageous, especially given the potential impact on Awoye's professional reputation.

92. Defendant Jones' conduct proximately caused emotional distress to Awoye.

93. Defendant Jones' false accusations and public attacks caused Awoye to suffer emotional distress.

94. The emotional distress suffered by Awoye was severe.

95. Being publicly accused of serious criminal conduct and having one's professional reputation attacked would cause severe emotional distress to a reasonable person.

## Count VII - Violation of Right of Publicity
### (against Defendant Meta Platforms, Inc.)

96. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97. Defendant Meta used Awoye's identity.

98. Defendant Meta allowed Defendant Jones to use Awoye's image alongside defamatory statements on Instagram without Awoye's consent.

99. Defendant Meta used Awoye's identity for its advantage, commercially or otherwise.

100. Defendant Meta benefited commercially from the engagement with this content through advertising revenue and user engagement.

101. Defendant Meta used Awoye's identity without his consent.

102. Awoye did not consent to the use of his image alongside defamatory content on Instagram.

103. Defendant Meta's use of Awoye's identity resulted in injury to Awoye.

104. The unauthorized use of Awoye's image in connection with defamatory content injured his reputation and commercial interests.

105. Awoye's right-of-publicity claims against Meta are not precluded or pre-empted by 47 U.S.C.S. § 230, as his claims are encompassed within the intellectual property carve-out, 47 U.S.C.S. § 230(e)(2). See *Hepp v. Facebook*, 14 F.4th 206 (3d Cir. 2021).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

1. Compensatory damages against all Defendants in an amount to be determined at trial, but in excess of $10,000,000.00, for damage to reputation, image, loss of business opportunities, emotional distress, and other actual damages resulting from the defamatory statements and reputational takings.

2. Punitive damages against all Defendants in an amount to be determined at trial, as Defendants' conduct was actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

3. A permanent injunction requiring Defendant, Julia Jones, to remove all defamatory statements about Plaintiffs from her social media accounts and prohibiting her from making similar statements in the future.

4. A permanent injunction requiring Defendant, Meta Platforms, Inc., to remove all false and reputationally harmful content about Plaintiffs from Instagram and to implement measures to prevent similar content from being posted in the future.

5. Attorneys' fees and costs.

6. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

SEMANOFF ORMSBY GREENBERG & TORCHIA, LLC
*/s/Samuel B. Fineman*
Samuel B. Fineman, Esq.
NJ ID No. 005381999

13

2617 Huntingdon Pike
Huntingdon Valley, PA 19006
(215) 887-0200 – tel.
sfineman@sogtlaw.com
Counsel for Plaintiffs, Jordan Awoye and Awoye Capital, LLC

Dated: October 7, 2025